[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
Review of the File 
This matter first came to the court by virtue of summons and complaint dated July 1, 1999 and returnable July 27, 1999, in which complaint the plaintiff petitioner in her prayer for relief asked for a dissolution of the marriage, alimony pendente lite and permanent, an allowance to prosecute, exclusive use and possession of the marital residence located at 4 Old Barry Road, Quaker Hill, an equitable division of all personal property and such further relief as in equity the court deems just.
Accompanying the complaint was a motion for alimony, allowance to CT Page 512 prosecute, exclusive use and possession of the marital residence and an equitable division of debt payments pendente lite.
In addition the usual automatic orders accompanied the complaint along with the return by the sheriff.
The defendant appeared by counsel on August 9, 1999.
The defendant filed a financial affidavit on September 13, 1999 and a document entitled "Agreement" bearing date of September 13, 1999 was also submitted to the court and approved, the same being signed by the plaintiff and the defendant and their respective attorneys.
The agreement under date of September 13, 1999 provided that the defendant would continue to pay all of the expenses associated with the marital home at 4 Old Barry Road. Quaker Hill, with the exception of any unnecessary purchases. In addition, the defendant to pay the sum of $120.00 per week as temporary alimony to the plaintiff.
The defendant to also pay for the repairs of a television set and a further provision with regard to time frames during which the defendant was not to be in the marital residence.
On April 6, 2000 the plaintiff filed a motion for alimony, an allowance to prosecute, exclusive possession of the residence and a division of debt payments.
On May 8, 2000 an order was entered by the Court, Kenefick, J., according sole possession of the marital residence without prejudice to the plaintiff.
The May 30, 2000 stipulation of the parties with the consent of their attorneys was to the following effect:
That the plaintiff wife shall have exclusive possession of the upstairs and main floor of the home. The defendant may reside in the basement level. He shall have the right to use the upstairs bathroom each morning to shower and bathe. He shall have the right to use the kitchen each evening from 5:00 p.m. to 6:00 p.m. Other than this limited access, the defendant shall not enter the upstairs or main floor of the home. All other outstanding orders of the court to remain in full force and effect.
The plaintiff and the defendant with their respective counsel appeared before the Court on December 19, 2000 and the matter was heard to a conclusion. CT Page 513
The court makes the following findings of fact: 
The plaintiff's maiden name was Joann Brown and the plaintiff and the defendant were united in marriage in the County of Queens, Jamaica, New York, on January 7, 1955.
The parties have resided in the state of Connecticut for more than one year prior to the bringing of this petition.
There are no minor children issue of this marital union.
Neither the plaintiff nor the defendant have been the recipients of welfare or assistance from the State of Connecticut or any town, city, municipality or subdivision thereof.
The marriage between the parties has irretrievably broken down with no reasonable prospect for reconciliation.
There were two children issue of ibis marital relationship; a daughter, now age 37, and a son, now age 45.
The plaintiff has resided in the marital home for the last 35 years. She described the premises as being modest.
There is apparently no mortgage indebtedness or encumbrance on the home.
In years past the plaintiff worked part time in the position of sales and/or being a cashier.
The last outside employed position of the plaintiff was approximately 12 years ago.
The plaintiff's education extended through a high school equivalency diploma which the plaintiff secured at a later point in her life.
The plaintiff is age 65.
The plaintiff characterized her health as follows: that she has arthritis in her feet and her hands; that she is subject to chronic bronchitis.
The plaintiff testified that one of her principle concerns was the maintenance of health insurance for her.
The defendant has worked at Electric Boat Division of General Dynamics CT Page 514 for many years and before that employment was a serving member in the United States Navy.
The plaintiff indicated that the home and residence required a good many items of repair. She indicated that the property needed a new floor in the bathroom, that the kitchen floor needed to be redone. That a new stove was needed and a new dishwasher and that many minor repairs were needed.
The plaintiff professes that she is very attached to the home, raised her family there and that, in her words, characterized it as "a part of her life".
The plaintiff claimed that a good many years ago, in her words, she "caught the defendant fooling around". The plaintiff testified that her feeling for the defendant has gone.
The plaintiff's lament was to the effect that the defendant in her words "treated her poorly" that there were few or no vacations over the years except for a trip to Niagara Falls 30 years ago.
The plaintiff lamented that she was never taken to dinner or out to engage social activities or conduct.
The plaintiff testified that she had been obliged to drive the same car for 23 years, more recently the defendant purchased a 1999 Toyota automobile for the plaintiff.
The plaintiff testified that she feels that she has no self esteem; that she had no say in financial matters in the family. The plaintiff again reiterated her wish and inclination to remain in and retain the family home.
Her testimony aside from that was to the effect that the other assets between the parties might be apportioned on a 50-50 basis.
The plaintiff testified that she does want and is desirous of having permanent alimony. She currently receives S125.00, [$125.00], a week and testified that her request at this juncture was for $275.00 a week.
The plaintiff is desirous of maintaining health insurance coverage and having the same continue on the basis of her husband's employment, even though that may be for a limited period of time.
The plaintiff requests that the court order and direct the defendant to pay for her health coverage as the same may be available or applicable. CT Page 515
The defendant is age 68.
As concerns the defendant's health he underwent a double bypass surgery three or four years ago.
The plaintiff described the plaintiff's health as "okay".
The plaintiff requested a share in the defendant's 401K and SSIP.
The plaintiff is desirous of having an order so that she may continue to have available to her benefits belonging to the defendant even after he might pass away.
The defendant has been employed by Electric Boat for over 45 years. He has held different positions with Electric Boat. The defendant has volunteered for travel with Electric Boat and for some time in the near term past has been in Bremerton, Washington working for Electric Boat, General Dynamics because of his special skills and abilities in matters of ships or submarines.
According to her testimony the plaintiff presently receives $615.00 a month from social security.
On an earlier occasion, prior to the trial, the plaintiff had expressed an opinion as to the value of the home being worth $150,000.00; that is in contrast to her present position.
The plaintiff, mindful of her earlier testimony, on cross examination indicated that in fact some of the requested repairs of the home could be accomplished with relatively modest expenditure.
The plaintiff acknowledged, in her words, that the defendant's "fooling around" occurred 44 years ago.
As indicated the plaintiff is desirous of retaining title to the Old Barry Road home.
The plaintiff testified that she is willing to pay the defendant for his equity share in the property; how that might be accomplished on her part is a matter of conjecture.
The plaintiff testified that she received her General Equivalency Diploma from high school about ten years ago.
The Toyota motor vehicle which the plaintiff presently operates is in CT Page 516 the joint names of the parties. The defendant provided the funds to purchase that vehicle.
The plaintiff testified that her son because of problems that exist does not have any free and easy conversations with her. Apparently there is some breach in that relationship, again apparently due to the son's attitude of trying to keep the plaintiff and the defendant together after this admittedly very long marriage. This is a marriage of approximately 45 years. The relationship between the plaintiff and the son of the parties apparently is quite strained.
The plaintiff's principle lament was what she termed mental abuse over the years and in her opinion that was the cause of the breakdown.
The home and residence of the parties is in the joint names of the parties. The plaintiff testified that the defendant did not believe in marriage counseling.
The plaintiff claimed that there were some instances of physical violence during this lengthy marriage but no specifics were provided to the court.
Apparently there were no problems with regard to the immoderate use of alcohol or substance abuse.
The plaintiff testified that "the fooling around" by the defendant many, many years ago was not the cause of the breakdown.
The plaintiff testified insofar as physical violence was concerned that there were occasions when the defendant choked her and kicked her under the table. The testimony was to the effect that the last time that this occurred was over 20 years ago.
The plaintiff testified that 20 years ago she consulted with counsel as concerns problem in the marriage but the matter was never pressed to a conclusion.
Years ago in her limited employment history, the plaintiff worked part time for a period of three years. The plaintiff testified that whatever earnings she did have, she spent on the children.
The defendant was born May 17, 1933; age now, 67.
His work in Bremerton, Washington is the result of his being on loan from Electric Boat to the Naval Shipyard in Oregon. He is an engineering logistics specialist. Part of his training and expertise requires CT Page 517 travel. He is presently working on the submarine SSN Alaska and has been there at that position since June 6, 1999. He returned for a time in June of 2000 and returned to Bremerton in July of this year. The defendant had a choice as to whether attend this employment opportunity in Bremerton, Washington or not and elected to take advantage of it.
Initially the plaintiff and the defendant first met at a social function and dance in Groton while the defendant was serving in the Navy.
The defendant's service in the military was for a period of about 4-1/2 years. He has been at Electric Boat for 44-1/2 years. He started as a pipefitter. In 1986-1987 he became a logistical specialist.
The defendant testified that he was desirous of having the plaintiff in the home while the children were growing up.
The home on Old Barry Road was purchased in December of 1963. The home is situated on a 1/2 acre plot. The defendant provided the funds which enabled the parties to purchase the home. A mortgage which was originally on the home has now been paid off and discharged.
During their occupancy the defendant added a porch to the property, finished the basement, also installed a half bath, added storm windows and has maintained the property and has done much interior decorating.
The defendant is equally as desirous as the plaintiff in keeping and retaining the home.
The adult son of the parties lives next door to the subject property.
The defendant testified that he was willing to give the plaintiff her equity in the residence plus a sum certain. It was his feeling that the plaintiff because of her age and physical problems could not properly maintain and look after and care for the property. There is a garden on the premises which the defendant has maintained for 20 years. There is a pool on the property made of cement and fiberglass that requires repair and attention.
The defendant acknowledged on occasion in his words putting the plaintiff down but claimed that the plaintiff was equally guilty of the same offense to him. He denied choking her or kicking her.
The defendant acknowledged pushing the plaintiff on one occasion.
The defendant acknowledged that the plaintiff and the defendant did not CT Page 518 engage very much in social outside activities.
The defendant has been, on his own, involved in sport activities and has refereed in basketball matters over the years.
The plaintiff has been content to leave all financial matters to the defendant.
The defendant characterized the plaintiff's claim of his "fooling around" as being nothing more than one occasion many years ago where a lady friend kissed him and there was lipstick on his shirt collar.
The defendant sustained an injury a number of years ago to his back incident to clearing the land on which the home is situated. He has back pains and discomfort every day.
He acknowledged the double bypass heart operation in January of 1988. He takes medication daily for high blood pressure; takes Lipitor on occasion. The defendant rated his health as good.
There is no mandatory retirement obligation in place at Electric Boat as concerns the defendant. He is eligible if he was so disposed to retire at the present time.
The 1990 Ford automobile which the defendant operates is in both names. The defendant is desirous of keeping that vehicle.
The defendant valued the Toyota automobile operated by the plaintiff at $17,000.00.
The defendant's proposal for alimony was $200.00 a week until such time as he might retire. The defendant indicated he was willing and disposed to let the plaintiff have one half of his IRA and General Dynamics' benefits.
The defendant testified the initiation of the dissolution petition came to him as a shock.
Apparently one problem that existed concerned a grandson of the parties who has attention deficit disability and who resided with the plaintiff and the defendant for a period of about one year and apparently created considerable distress in the home. This grandson is now age 23 and resides elsewhere.
The defendant denied inflicting any mental abuse on the plaintiff and the defendant was desirous of having the grandson return to the marital CT Page 519 home for the purpose of trying to help the young man with regard to the problems which afflict him.
This attitude by the defendant was even with the acknowledgment that the presence of the grandson did contribute to the breakdown of the relationship.
The defendant testified that he was willing to give the plaintiff the total sum of $97,000.00 for her equity in the home plus $20,000.00 and the equal apportionment of everything else.
Incident to his work and duties, the defendant on occasion gets loaned out on different military jobs. The plaintiff testified that for many years she drove a 1979 motor vehicle and that the defendant told her that that was good enough.
The defendant has provided funds to help the son of the parties and assisted in enabling the son to acquire a Lincoln Town Car.
The defendant's testimony was to the effect that the plaintiff spent approximately $1,200.00 a month on credit card purchases.
The defendant acknowledged that on the rare occasion when he kicked the plaintiff that it was while the parties were sitting at a table and it was to get her attention in order that they might leave the premises.
The defendant has loaned his son $17,000.00.
In addition to his regular compensation, the defendant receives an additional 15% over his basic compensation by virtue of his being in Bremerton and travel status.
The defendant acknowledged that he has made other loans to his son; $10,000.00 when the son purchased a home in 1975.
The defendant gave the daughter of the parties $45,000.00 in 1988-1989 for a down payment on her Stonington home. He discussed this gift with the plaintiff before making the gift.
The defendant testified he has certain stock options with regard to his employment.
At one time in the past a second mortgage was put on the Old Barry Road property which was security for a loan which the defendant made to the son of the parties. As indicated, the Old Barry Road home is now free and clear of any encumbrance. CT Page 520
The son of the plaintiff and the defendant has four children; one of which is going to college and the defendant helps and assists that child.
The defendant testified that he was desirous of helping not only his children but the grandchildren.
As concerns certain life insurance and the cash value thereof, the defendant testified that he would he willing to leave that in its present form with the plaintiff wife being the irrevocable beneficiary.
The plaintiff in her testimony acknowledged that the defendant had discussed gifts to their children with her and acknowledged his being, in her words, "good to the children". The plaintiff also acknowledged the need for help and understanding as concerns the grandson.
From the exhibits submitted to the court in this proceeding, the court makes the following findings of fact:
Plaintiff's Exhibit 1 is a comparative market analysis prepared for the plaintiff as concerns the home residence located at 4 Old Barry Road. This exhibit and alleged market analysis sets forth figures with regard to allegedly comparable properties and properties that have recently sold in the town of Waterford. The valuations of properties that have sold range from a high of $109,000.00 to a low of $104,000.00 with an average of $106,500. This particular exhibit does not set a definitive figure of value for the subject property.
Defendant's Exhibit A is an appraisal of real estate performed by Miner and Silverstein. This is a detailed appraisal of the subject property and in fact values the subject premises at $155,500.00. This appraisal includes photographs, comparable properties and allied data and appears to be comprehensive.
From the health form the court notes that the defendant was born on May 17, 1933.
The plaintiff was born on August 6, 1937.
The husband's formal education extended through one year in college.
As indicated earlier, the wife's education extended through completing high school with an equivalency diploma.
From the financial affidavit filed by the plaintiff on September 13, CT Page 521 1999, at that time the plaintiff was unemployed, valued the 4 Old Barry Road property at $150,000.00.
The plaintiff's current financial affidavit reflects that she is now and has indicated for a long time in the past has been unemployed. She shows periodic temporary alimony received in the amount of $120.00 a week, social security broken down on a weekly basis, $143.02 a week, for a total weekly net income of $263.02. She shows weekly expenses which total $200.00, no debts.
On the basis of her current financial affidavit, the plaintiff values the marital residence property at $106,050.00 free and clear. She values the 1999 Toyota Camry motor vehicle at $20,000.00 free and clear. The plaintiff shows a 1977 Chevrolet automobile but no values attached thereto.
Apparently the plaintiff has no savings accounts, has $5,600.00 in an IRA and shows total assets which consist of the total value of the real estate, the value of the Toyota automobile and the IRA as being $131,650.00.
The defendant's financial affidavit reflects gross weekly wages from his employment at $1,075.00 a week, deductions of $363.77 for taxes, social security, SSIP contributions and insurance for a net of $711.23. Weekly expenses of $563.00, no debt.
The defendant values the 4 Old Barry Road property at $155,500.00 with a 100% equity, a 1990 Ford automobile valued at $500.00 free and clear, $8,499.00 in the Charter Oak Federal Credit Union; insurance, cash value, Commercial Union, $58,000.00. The other items shown in the insurance category is apparently only the face amount with no cash value. Donald Lufkin and Jenrette IRA, $101,500.00; General Dynamics 401K, $394,113.00, for a total of all assets of $746,062.00.
 Discussion
This is a marriage of extremely long duration. As of January 7, 2001 the parties will have been united in marriage for almost 46 years.
The husband is age 68.
The wife age 64.
The court has touched on their respective educations and the states of their health. CT Page 522
The defendant husband is somewhat more educated than his wife and apparently has kept his nose to the financial grindstone for many, many years and become very skilled and valued as an employee of Electric Boat to the extent that he is sent off on various assignments or on loan to various matters pertaining to submarine construction.
Alcohol has not been a factor in this union nor has substance abuse.
The issue as to physical violence is relatively sketchy and whatever physical violence may have occurred in fact occurred many years ago and there is nothing of any recent vintage to indicate any problems in that respect.
It may well be that over the years the parties have drifted apart somewhat and the defendant's substantial intervals of time away from the home may have played a factor in the matter. The well intentioned activities of the plaintiff and the defendant in trying to help and further the best interests of their grandson, who is age 23, may have contributed to stresses in the marital relationship.
The defendant, as indicated, has manifestly been very hard working and I believe the record supports the extent of his generosity to the two children issue of this marriage who are both now mature adults.
The defendant manifestly has endeavored to be extremely supportive of the children of this marriage, both emotionally and from a financial viewpoint.
As concerns the present physical status of the parties, the plaintiff wife would seem to be in a somewhat poorer position in that regard with regard to arthritis and allied problems and query as to whether or not she would be able to reasonably maintain and hold on to the subject real estate which has been the parties' home for so many years.
Both of the parties appeared candid in their testimony in response to questions by counsel or the court, particularly the defendant who is most open with regard to a posture of wanting to deal more than fairly with the plaintiff.
It is particularly unfortunate that after all these years and with two grown children that the parties should now come to the court with regard to a request that the marital union be dissolved and a particularly difficult issue is presented to the court with regard to the disposition and award as concerns the marital home and residence.
From the plaintiff's vantage point it would appear that the principle lament was lack of an active social life and allied considerations. The CT Page 523 defendant apparently being content to plug along on a daily basis, make sure that all the bills were paid, and follow a fiscally conservative trail.
It is unlikely that the plaintiff wife will ever again enter the work place or be actively engaged in matters of employment at this point in her life.
The defendant on the other hand enjoying relatively good health and mindful of apparently the wide spectrum of his skills and expertise in his field of calling can be expected to remain active in that respect for an indefinite period of time into the future.
 The Law 
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S.) § 46b-82 regarding alimony, § 46b-62 regarding attorney's fees, the issue of support is not presently before the court.
The court has considered all of the applicable case law that govern the matter.
The court has considered the testimony of the parties, their candor or lack thereof, and all exhibits and the arguments of counsel.
In considering die issue of alimony, particularly in this proceeding, the court has considered the length of the marriage, the cause of the dissolution no matter how intangible, the age, health, station, occupation, employability, estate and needs of the parties.
The court has considered the standards of living of the parties.
The court has considered the respective financial positions of the plaintiff and the defendant, their prospects for future income and opportunities.
The court has considered the issue of fault no matter how nebulous.
The court has considered all of the evidence and the credibility and weight that should be given thereto.
With regard to pension rights and benefits and the vesting thereof, the court has considered Wendt v. Wendt, 59 Conn. App. 656 (September 2000).
As concerns the valuation of the parcel of real estate, the exhibit CT Page 524 presented by the defendant appears more worthy of consideration by the court as concerns the valuation thereof.
The Court enters the following orders. 
As concerns the real estate known as 4 Old Barry Road, the plaintiff shall convey all of her right, title and interest in and to that real estate and the improvements thereon to the defendant and shall receive as a consideration therefore full payment for her one-half equity in the subject premises plus an additional $20,000.00.
The court having found that the fair market value of the subject real estate on the basis of the Miner and Silverstein appraisal being $155,500.00, one-half thereof is to the amount of $77,750.00 plus an additional $20,000.00 for a total of $97,750.00.
The payment to the plaintiff by the defendant incident to the transfer of the title of the real estate is to be based on the defendant being able to take and secure from the assets presently shown on his financial affidavit that requisite sum and amount; to wit, $97,750.00. The defendant mindful that the property is free and clear of any and all encumbrances nevertheless shall be responsible for any taxes, water rate bills or expenses attendant to the property as they may presently exist.
The defendant shall pay the plaintiff the sum of $200.00 a week as periodic alimony; the same to continue, mindful of the length of the marriage, until the plaintiff's death, remarriage or cohabitation with a non-related male as provided for under the statute.
The court enters this order with regard to the real estate, on the premise that the plaintiff's present physical condition and the present state of the property suggests that the plaintiff could not without difficulty maintain and care for the property and the defendant is in a better position to do so.
The plaintiff of course may use whatever sums may come to her pursuant to these orders incident to perhaps the purchase of a condominium which would not require any external efforts on her part.
After the payment and delivery of the aforementioned sum by the defendant to the plaintiff from his existing assets as they appear on his financial affidavit, the then remaining balance of his IRA account with Donaldson, Lufkin and Jenrette and the then remaining balance of the General Dynamics 401K shall be apportioned equally between the parties, 50% to the plaintiff wife and 50% to the defendant husband. CT Page 525
The defendant may keep and retain the 1990 Ford Tempo motor vehicle.
The defendant may keep and retain the balance shown in his Charter Oak Federal Credit Union as reflected on his financial affidavit to the amount of $8,499.00.
As concerns life insurance, on the basis of the testimony and the statements of the parties, the defendant shall maintain and keep in full force and effect the Commercial Union life insurance which has, according to the testimony, a cash value of $58,000.00 with the plaintiff being the irrevocable beneficiary, the policy not to be depleted, pledged or used for security in any way during the lifetime of the plaintiff.
The other remaining insurance item on the financial affidavit as understood by the court has no cash surrender value.
The parties have no debts, one or the other, and therefore no apportionment thereof is necessary.
The plaintiff may retain and keep the 1999 Toyota Camry motor vehicle valued at $20,000.00.
The 1977 Chevrolet automobile reflected on the plaintiff's affidavit with no value shown may be retained by the defendant.
The plaintiff may retain her IRA account as shown on her financial affidavit of approximately $5,600.00.
As concerns personal property, the plaintiff shall be entitled to take such items of personal property, furnishings and like matters from the subject residence when she secures other quarters and in the event that there is a dispute with regard to items of personal property, clothing, effects and matters of like nature the matter may be referred for binding arbitration.
In any event the defendant will be entitled to retain his tools and personal effects, memorabilia and matters of like nature.
The court enters no orders with regard to attorney's fees. Each of the parties shall be responsible to their respective counsel.
The defendant shall allow to the plaintiff and cooperate with the plaintiff in maintaining health insurance coverage for her through COBRA as may be available incident to his employment for the statutory period of time allowed and the premiums associated therewith shall be apportioned one-half to the defendant and one-half to the plaintiff during CT Page 526 the allowed COBRA period.
The issue of periodic alimony may be readdressed on the occasion of the defendant's retirement from his present employment with Electric Boat, General Dynamics.
The defendant may retain his stock options, if any.
The court grants the relief prayed for.
The marriage of the parties is dissolved and they are declared to be single and unmarried pursuant to the provisions of the statute.
Austin, JTR